HARRY J. RUBIN AND MARGARET C. RUBIN, APPELLANTS, v. SIDNEY GLASER, DIRECTOR OF THE DIVISION OF TAXATION, DEPARTMENT OF THE TREASURY OF THE STATE OF NEW JERSEY, AND A. JAMES REEVES, TAX ASSESSOR, LONG BEACH TOWNSHIP, OCEAN COUNTY, NEW JERSEY, RESPONDENTS.

Argued February 19, 1980—Decided June 19, 1980.

*Harry J. Rubin* argued the cause *pro se.*

*Stephen Skillman,* Assistant Attorney General, argued the cause for respondent Sidney Glaser, Director of the Division of Taxation (*John J. Degnan,* Attorney General of New Jersey, attorney; *Harry Haushalter,* Deputy Attorney General, on the brief).

The opinion of the Court was delivered by

SCHREIBER, J.

Plaintiffs Harry J. Rubin and his wife Margaret have challenged the constitutionality of the Homestead Rebate Act, *N.J. S.A.* 54:4–3.80 *et seq.* Denied a rebate with respect to real property taxes paid on their summer home, they filed a claim with the local tax assessor for a Homestead Tax Rebate for the year 1977. Upon rejection of their claims, plaintiffs unsuccessfully sought relief from the County Board of Taxation and then the Division of Tax Appeals. When their appeal to the Appellate Division failed, 166 *N.J.Super.* 258 (1979), they filed an appeal with this Court. *R.* 2:2–1(a).

The facts are undisputed. Plaintiffs, residents of York, Pennsylvania, have been domiciled in Pennsylvania all their lives. Harry J. Rubin, a member of the Pennsylvania Bar, is self-employed. His wife, Margaret C. Rubin, is a social worker employed by the Pennsylvania Department of Public Welfare. In 1965 they acquired a house in Long Beach Township, New Jersey, which they occupy for approximately four to five weeks

during the summer and intermittently throughout the year. It serves as a vacation home.

Plaintiffs' contentions are threefold. They assert first that the Legislature in enacting the Homestead Rebate Act exceeded the authority vested in it by Article VIII, § 1, par. 5 of the New Jersey Constitution; second, that the Act contravenes the Privileges and Immunities Clause of the federal Constitution, Art. IV, § 2, cl. 1; and third, that it conflicts with the Equal Protection Clause of the Fourteenth Amendment.

## I.

The Homestead Rebate Act, in pertinent part, provides that:

> Every citizen and resident of this State shall be entitled, annually, to a homestead rebate on a dwelling house and the land upon which such dwelling house is situated, or on a dwelling house assessed as real estate situated on land owned by another or others *which constitutes the place of his domicile and which is owned and used by him as his principal residence.* [*N.J.S.A.* 54:4–3.80(a); emphasis added]

It was enacted by the Legislature in response to Article VIII, § 1, par. 5 of the state Constitution which provides that:

> The Legislature may adopt a homestead statute which entitles homeowners, residential tenants and net lease residential tenants to a rebate or a credit of a sum of money related to property taxes paid by or allocable to them at such rates and subject to such limits as may be provided by law. Such rebates or credits may include a differential rate or credit to citizens and residents who are of the age of 65 or more years, or less than 65 years of age who are permanently and totally disabled according to the provisions of the Federal Social Security Act, or are 55 years of age or more and the surviving spouse of a deceased citizen or resident of this State *who during his lifetime received, or who, upon the adoption of this amendment and the enactment of implementing legislation, would have been entitled to receive a rebate or credit related to property taxes.

The first sentence of the constitutional amendment was adopted at the general election of November 4, 1975, and the second at the general election of November 2, 1976.

The plaintiffs admit that they do not satisfy the statutory criterion, namely that their New Jersey summer home is their principal residence. However, they contend that the Homestead Rebate Act unconstitutionally narrows the rebate envisioned in Article VIII, § 1, par. 5 by limiting it to dwelling houses and

land owned and used by domiciliaries as their principal residences.[1]

We reject that contention. The constitutional provision does not define the word "homestead." Constitutional history casts no light on its meaning. In common usage, it has been defined as "[t]he land and buildings thereon occupied by the owner as a home for himself and his family." *Webster's New International Dictionary*, Second Edition (1952). "The word 'homestead' . . . in popular parlance . . . [means] the home or residence of the family; the term signifies the dwelling house in which the family resides, with the usual and customary appurtenances, including outbuildings that are necessary or convenient for family use, and lands that are devoted to the same purpose." 40 *Am.Jur.2d*, § 1 at 115–116 (1968). The word "homestead" has previously been employed by the Legislature in the homestead exemption statute. *R.S.* 2:26–110 *et seq.* That act, which exempted from execution property up to a value of $1,000, was not reenacted in 1952 upon the revision of Title 2 into 2A. The statute contemplated a homestead as a lot and building "occupied as a residence and owned by the debtor, being a householder and having a family . . . ."[2] *R.S.* 2:26–110.

Whether "homestead" in the constitutional amendment referred to only one home need not be decided. Unquestionably, the Constitution envisages vesting the Legislature with discretionary powers within the constitutional framework. For the Legislature "may" adopt a homestead statute "subject to such limits as may be provided [in the Legislature's judgment] by law." Art. VIII, § 1, par. 5. Therefore, the Legislature is empowered, subject to federal and state constitutional limita-

---

[1]Plaintiffs' standing to maintain this action has not been raised and we are not passing upon that issue. *Cf. Salorio v. Glaser*, 82 *N.J.* 482, 490 (1980).

[2]Although the statute was not reenacted in Title 2A, it may have vested rights in homeowners where the necessary recordation in the homestead exemption book has been made and notice duly published. We do not decide this issue today. It is clear that after January 1, 1952, no additional homestead estates could be created.

tions, to define homestead. Since the Legislature adopted a restrictive approach, by defining homestead in terms of the principal residence and domicile, it is only necessary that we pass on the validity of the legislative enactment.

## II.

The Homestead Rebate Act's application solely to the house and land which serve as a principal residence does not violate the Privileges and Immunities Clause, Art. IV, § 2, cl. 1, or the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. The Privileges and Immunities Clause provides that:

> The Citizens of each State shall be entitled to all the Privileges and Immunities of Citizens in the several States.

In *Paul v. Virginia*, 75 *U.S.* 168, 19 *L.Ed.* 357 (1869), Justice Field explained the purpose of the Clause in the following manner:

> It was undoubtedly the object of the clause in question to place the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned. It relieves them from the disabilities of alienage in other States; it inhibits discriminating legislation against them by other States; it gives them the right of free ingress into other States, and egress from them; it insures to them in other States the same freedom possessed by the citizens of those States in the acquisition and enjoyment of property and in the pursuit of happiness; and it secures to them in other States the equal protection of their laws. [*Id.* at 180, 19 *L.Ed.* at 360]

More recently the Supreme Court stated that this constitutional provision

> was designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy. For protection of such equality the citizen of State A was not to be restricted to the uncertain remedies afforded by diplomatic processes and official retaliation. [*Toomer v. Witsell*, 334 *U.S.* 385, 395, 68 *S.Ct.* 1156, 1162, 92 *L.Ed.* 1460, 1471 (1948); footnotes omitted]

In *Salorio v. Glaser*, 82 *N.J.* at 500–502, Justice Pashman noted the United States Supreme Court's two-pronged test to evaluate the validity of distinctions between residents and nonresidents. First, the Clause governs only those rights or activities which are fundamental in the sense that interference would "hinder the formation, the purpose, or the development of a single union . . . ." *Baldwin v. Montana Fish & Game Comm'n*, 436 *U.S.* 371, 383, 98 *S.Ct.* 1852, 1860, 56 *L.Ed.2d* 354, 365 (1978). "Only

with respect to those 'privileges' and 'immunities' bearing upon the vitality of the Nation as a single entity must the State treat all citizens, resident and nonresident, equally." *Ibid.* See also *Corfield v. Coryell*, 6 *F.Cas.* 546, 552 (C.C.E.D. Pa. 1823) (No. 3,230). Second, though such a fundamental interest may be involved, the distinction between residents and nonresidents may be justified. Thus, in *Toomer v. Witsell*, the Court wrote:

> Like many other constitutional provisions, the privileges and immunities clause is not an absolute. It does bar discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States. But it does not preclude disparity of treatment in the many situations where there are perfectly valid independent reasons for it. Thus the inquiry in each case must be concerned with whether such reasons do exist and whether the degree of discrimination bears a close relation to them. The inquiry must also, of course, be conducted with due regard for the principle that the States should have considerable leeway in analyzing local evils and in prescribing appropriate cures. [334 *U.S.* at 396, 68 *S.Ct.* at 1162, 92 *L.Ed.* at 1471; footnote omitted]

See also *Hicklin v. Orbeck*, 437 *U.S.* 518, 525–526, 98 *S.Ct.* 2482, 2488, 57 *L.Ed.*2d 397, 404 (1978).

■ A state may not unjustifiably discriminate between residents and nonresidents in the exercise of its taxing power. See *Austin v. New Hampshire*, 420 *U.S.* 656, 662–664, 95 *S.Ct.* 1191, 1195–1197, 43 *L.Ed.*2d 530, 535–537 (1975); *Ward v. Maryland*, 79 *U.S.* 418, 20 *L.Ed.* 449 (1871). However, the Court has upheld and sanctioned differences in the taxation context.

In *Travelers' Insurance Co. v. Connecticut*, 185 *U.S.* 364, 22 *S.Ct.* 673, 46 *L.Ed.* 949 (1901), the Court upheld a Connecticut tax imposed upon stockholders of domestic corporations. Resident stockholders could deduct an allocable share of real estate taxes paid by the corporation from the fair market value of the stock. Nonresidents could not make that deduction. The Court reasoned that the nonresidents were being taxed in proportion to the benefits bestowed upon them by the taxing state.

> It is enough that the state has secured a reasonably fair distribution of burdens, and that no intentional discrimination has been made against nonresidents. [185 *U.S.* at 371, 22 *S.Ct.* at 676, 46 *L.Ed.* at 954]

See also *Davis v. Franchise Tax Bd.*, 71 *Cal.App.*3d 998, 139 *Cal.Rptr.* 797 (Ct.App. 1977), dismissed for want of substantial federal question, 434 *U.S.* 1055, 98 *S.Ct.* 1222, 55 *L.Ed.*2d 755 (1978), sustaining California income tax provision permitting

only residents to utilize income averaging statute; *Wheeler v. Vermont*, 127 *Vt.* 361, 249 *A.2d* 887 (Sup.Ct. 1969), dismissed for want of substantial federal question, 396 *U.S.* 4, 90 *S.Ct.* 24, 24 *L.Ed.2d* 4 (1969), affirming differential income tax rates placed on Vermont residents as opposed to nonresidents; *Anderson v. Tiemann*, 182 *Neb.* 393, 155 *N.W.2d* 322 (Sup.Ct. 1967), dismissed for want of substantial federal question, 390 *U.S.* 714, 88 *S.Ct.* 1418, 20 *L.Ed.2d* 254 (1968), upholding the validity of permitting only residents to take food sales tax expenses as a credit under the Nebraska income tax; *Berry v. State Tax Comm'n*, 241 *Or.* 580, 397 *P.2d* 780 (Sup.Ct. 1964), dismissed for want of substantial federal question, 382 *U.S.* 16, 86 *S.Ct.* 57, 15 *L.Ed.2d* 12 (1965), affirming the propriety of a provision under the Oregon income tax law which allowed only residents to deduct certain personal expenses related to their place of residency.[3]

A principle which may be derived from these decisions is that state taxing statutes, conferring a benefit or advantage only on residents, do not run afoul of the Privileges and Immunities Clause, provided they bear a "close" or "substantial relationship" to a legitimate purpose independent of discrimination against nonresidents. *Hicklin v. Orbeck*, 437 *U.S.* at 525, 527, 98 *S.Ct.* at 2488, 2489, 57 *L.Ed.2d* at 404, 405; *Toomer v. Witsell*, 334 *U.S.* at 396, 68 *S.Ct.* at 1162, 92 *L.Ed.* at 1471. The Homestead Rebate Act satisfies the requirements of the Privi-

---

[3]The Supreme Court has repeatedly stated that its "summary dismissals are . . . to be taken as rulings on the merits . . . in the sense that they rejected the 'specific challenges presented in the statement of jurisdiction' and left 'undisturbed the judgment appealed from.' " *Washington v. Yakima Indian Nation*, 439 *U.S.* 463, 476 n.20, 99 *S.Ct.* 740, 749 n.20, 58 *L.Ed.2d* 740, 753 (1979) (citation omitted), quoting *Mandel v. Bradley*, 432 *U.S.* 173, 176, 97 *S.Ct.* 2238, 2240, 53 *L.Ed.2d* 199, 205 (1973). See *Hicks v. Miranda*, 422 *U.S.* 332, 343–345, 95 *S.Ct.* 2281, 2288–2289, 45 *L.Ed.2d* 223, 235–237 (1975). While the Court has stated that "[t]hey do not . . . have the same precedential value . . . as does an opinion of [the] Court after briefing and oral arguments on the merits," a summary dismissal does represent a view that the judgment appealed from was correct as to those federal questions raised and necessary to the decision. *Yakima Indian Nation*, 439 *U.S.* at 476 n.20, 99 *S.Ct.* at 749 n.20, 58 *L.Ed.2d* at 753; see *Edelman v. Jordan*, 415 *U.S.* 651, 670–671, 94 *S.Ct.* 1347, 1359–1360, 39 *L.Ed.2d* 662, 676–677 (1974).

leges and Immunities Clause, bearing a close relationship to a proper purpose irrespective of the impact upon nonresidents.

First, we emphasize that the Act's application solely to principal places of residence is closely related to the beneficent purpose of alleviating the heavy realty tax burden. As Judge Morgan wrote for the Appellate Division, the rebate was meant to assist "the taxpayer in times of escalating property taxes to keep a roof over his head." 166 *N.J.Super.* at 265. The Legislature did not intend to foster ownership of property for a second home to be used for vacations or for purposes other than maintaining a principal residence.

Second, this statutory aim was not directed against nonresidents. Thus, New Jersey residents who do not own a principal residence in the State are on the same footing as nonresidents. For example, a New Jersey resident whose principal place of residence is a rented apartment would not receive a rebate on a home he owned at the New Jersey shore. Moreover no one is entitled to a rebate of taxes paid on a second home. Thus, plaintiffs are treated the same as New Jersey residents who own a second home for summer vacations in New Jersey with respect to rebates on that second home.[4]

In passing, we note that the Legislature enacted the Homestead Rebate Act in conjunction with the New Jersey Gross Income Tax Act. *N.J.S.A.* 54A:1–1 *et seq.* Some of the revenues derived from the gross income tax were to be applied to the homestead rebates. *N.J.S.A.* 54A:9–25. Operation of the Homestead Rebate Act was contingent upon passage of the gross income tax. *L.* 1976, *c.* 72, §§ 15, 16. There is some nexus between those who own their principal residences in New Jersey and those who pay the New Jersey gross income tax. A nonresident who owns a summer home in New Jersey and earns no income in New Jersey, on the other hand, is not subject to the gross income tax.

[4] New Jersey residents have also been denied rebates if their property is only a seasonally occupied dwelling. See *Brown v. Lacey Tp.* (Div. of Tax Appeals, Dkt., No. HTR 2–77 (1977)).

■ Plaintiffs' contention with respect to the Equal Protection Clause is equally without merit. There has been no meaningful restriction on their fundamental right to travel and so the burden does not rest upon the State to establish a compelling state interest to justify the law. The Homestead Rebate Act does not penalize the exercise of the right to travel. That right is penalized when nonresidents are denied "a basic necessity of life" or a "fundamental" right. *Compare Memorial Hosp. v. Maricopa Cty.*, 415 *U.S.* 250, 94 *S.Ct.* 1076, 39 *L.Ed.*2d 306 (1974) (one-year residency requirement as a condition to an indigent's receipt of non-emergent hospital or medical care at a county's expense "penalizes" the right to travel), *Dunn v. Blumstein*, 405 *U.S.* 330, 92 *S.Ct.* 995, 31 *L.Ed.*2d 274 (1972) (durational residency requirement for voting denied a "fundamental political right" and "penalized" the right to travel) and *Shapiro v. Thompson*, 394 *U.S.* 618, 89 *S.Ct.* 1322, 22 *L.Ed.*2d 600 (1969) (one-year residency requirement for receipt of welfare benefits "penalizes" the right to travel) *with Sosna v. Iowa*, 419 *U.S.* 393, 95 *S.Ct.* 553, 42 *L.Ed.*2d 532 (1975) (upholding one-year residency requirement for divorce action within the state) and *Vlandis v. Kline*, 412 *U.S.* 441, 93 *S.Ct.* 2230, 37 *L.Ed.*2d 63 (1973) (upholding one-year residency requirement as a condition to lower tuition at state university). Denial of a homestead rebate on a vacation home does not rise to the level of a deprivation of "a basic necessity of life" or of a "fundamental" right. Furthermore, the homestead rebate is not denied to those persons, and only those persons, who have exercised their constitutional right of interstate migration. See *Dunn v. Blumstein*, 405 *U.S.* at 338, 92 *S.Ct.* at 1001, 31 *L.Ed.*2d at 281–282. Moreover, the Act contains no residential durational element of the type which has been held invalid where the individual has been required to have resided within the state for a minimum period of time. The Supreme Court has expressly noted that in the absence of a durational residency issue, it did "not intend[ ] to 'cast doubt on the validity of appropriately defined and uniformly applied bona fide residence requirements.'" *Memorial Hosp. v. Maricopa Cty.*, 415 *U.S.* at 255, 94 *S.Ct.* at 1081, 39 *L.Ed.*2d at 313, quoting *Dunn v. Blumstein*, 405 *U.S.* at 342 n.13, 92 *S.Ct.* at 1003 n.13, 31

*L.Ed.*2d at 284 n.13. This being so, the statute need not be measured by the strict scrutiny standards.

■ Absent infringement of a fundamental right or discrimination against a suspect class,[5] equal protection is not denied if the legislative classification is reasonable and bears a rational relationship to a legitimate governmental objective. See *San Antonio School Dist. v. Rodriguez,* 411 *U.S.* 1, 40, 93 *S.Ct.* 1278, 1300, 36 *L.Ed.*2d 16, 47 (1973). We have recently adverted to the broad deference accorded legislation with respect to taxation programs. See *McKenney v. Byrne,* 82 *N.J.* 304 (1980), and cases cited therein. We agree fully with Judge Morgan, writing for the Appellate Division below, that:

> The classification here evidences the Legislature's attempt to blunt escalating property taxes that threaten a family's ability to continue living in their home. We have no doubt that lessening tax burdens for that essential reason, and denying relief to less essential types of residential property ownership, is well within the Legislature's discretion . . . . [166 *N.J.Super.* at 268]

Affirmed.

*For affirmance*—Chief Justice WILENTZ, Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and POLLOCK—6.

*For reversal*—None.

---

[5]Even if denial of the rebate were limited to nonresidents, nonresidency is not a suspect classification. See *Baldwin v. Montana Fish & Game Comm'n,* 436 *U.S.* 371, 389–390, 98 *S.Ct.* 1852, 1863, 56 *L.Ed.*2d 354, 368–369 (1978).