RIMM, J.T.C.
This is a gross income tax case in which the court must determine if plaintiff-husband was a resident taxpayer in 1984 under the New Jersey Gross Income Tax Act, N.J.S.A. 54A:1-1 et seq. A resident taxpayer is defined as an individual “who is domiciled in this State.” N.J.S.A. 54A:1-2.m.1. The same section, however, also provides that an individual who is domiciled in this State is nevertheless not a resident taxpayer if “he maintains no permanent place of abode in this State, maintains a permanent place of abode elsewhere, and spends in the aggregate no more than 30 days of the taxable year in this State.” A nonresident taxpayer is a taxpayer who is not a resident. N.J.S.A. 54A:1-2.n.
Plaintiff-husband, hereinafter designated as plaintiff, presently resides at 407 Reedy Drive, Bricktown, New Jersey. He claims that he was not domiciled in New Jersey in 1984. If he was domiciled in New Jersey, he claims that he maintained no permanent place of abode in this State, maintained a permanent place of abode in Saudi Arabia and spent in the aggregate no more than 30 days in New Jersey in 1984.
Plaintiffs made a claim for a refund of gross income taxes paid for 1984. The Division of Taxation denied the claim, and, *291 as a result of information disclosed during an audit and conference, determined that the taxpayers were liable for a deficiency in the amount of $155 for taxes, penalty and interest to June 15, 1986. Following notification of the determination of the deficiency, plaintiffs filed a complaint with the Tax Court seeking a refund in the amount of $1,314. Defendant answered denying plaintiffs’ right to a refund and asserted that plaintiffs are liable for a deficiency of New Jersey gross income taxes due for the tax year 1984 in the amount of $155 as determined by the division.
While he was living in New Jersey in 1982, plaintiff obtained a job with Foster Wheeler Management Operations, Ltd. (FW), an English company based in Reading, England. FW assigned him to work for the Royal Commission in Saudi Arabia. The Royal Commission is an arm of the government of the Kingdom of Saudi Arabia. On October 7, 1982, plaintiff left for Saudi Arabia to take up employment there “on a single status assignment.” He had been told that he could not take his family with him. His family, consisting of plaintiff-wife and their three children, Kristen, Eric and Allison, who were 12 years, six years and four years of age, respectively, in 1984, remained in the home owned in the joint names of plaintiffs at 407 Reedy Drive, Bricktown, New Jersey. Even though his family resided in Bricktown, plaintiff testified that he did not consider the place of residence of his wife and children as his home after he left for Saudi Arabia in October 1982. However, plaintiff also testified that he was not “abandoning the United States as his home.” His employment only required him to commit that he “would stay as long as they (the Saudi Arabian government) wanted” him, and he testified that he goes to live wherever he can sell his services.
Plaintiff left for Saudi Arabia on a two-year work visa for an indefinite work period, the visa to be renewable every two years. Two-year work visas, according to plaintiff, are given to professional people for an indefinite work period. Plaintiff claims that two-year work visas are only issued to persons who are in Saudi Arabia “on indefinite time assignments,” but he *292 also testified that he could remain in Saudi Arabia only as long as the Saudi Arabian government wanted him to remain there. He had no employment contract with either FW or the Royal Commission and had only a work visa as evidence of his employment. He was in Saudi Arabia “indefinite at the will of the Saudi Arabian government,” that is, at the “will” of the Royal Commission.
Plaintiff testified that he rented an apartment, owned a car, and had a Saudi Arabian driver’s license. He also maintained a savings account in Saudi Arabia on which account he drew for living expenses. He considered his permanent home to be in Saudi Arabia in 1984 and during that year was only in New Jersey for a total of ten days.
While in Saudi Arabia he worked as an industrial security supervisor employed by FW, but his work was actually performed for the Saudi Arabian Royal Commission which had issued his work visa. The Royal Commission is responsible for all development in the western part of the country. It is involved with building power plants, communities and hospitals, and with building and operating oil refineries. As an industrial security supervisor, he was “responsible for the fire and safety and security of the area” to which he was assigned. His duties involved training personnel, writing policies, procedures and “programs in all three of those disciplines.” He was training Saudi Arabian nationals “in those professions” to perform the same type of services he was performing. When he felt that such personnel “were good enough” he would recommend that they be sent to a school either in Saudi Arabia or, if they were “top notch,” in the United States or England for further training. He paid “social security” to the Kingdom of Saudi Arabia for the years 1982, 1983 and 1984 as evidenced by an “Employee Statement of Annual Contributions to the Saudi Arabian Government Organization of Social Insurance” filed by plaintiff’s employer for each of the years 1982, 1983 and 1984.
The Royal Commission paid FW $100,000 a year for plaintiff’s services. From this payment FW made certain deductions *293 and paid over the balance in accordance with plaintiffs instructions. Part of his salary was paid to plaintiff in Saudi Arabia. The rest was deposited by FW in the United States, part in a money market account on which he could draw in a bank in Bricktown, New Jersey, and part in a money market account on which he could draw in a bank in Hawley, Pennsylvania. The percentage deposited in each bank depended on prevailing interest rates. His method for handling his money in this way was “just so there would be no problem. It was to avoid something like I’m going through right now.” Plaintiff-wife also maintained a separate bank account in Bricktown, New Jersey.
For 1983,1984, 1985 and 1986, he filed a “bona fide residency in Saudi Arabia” federal income tax return. He also filed “a nonresident” income tax return for each of these years with the State of New Jersey.
Plaintiff also claims that the Ocean County Board of Elections carried him as “permanent non-resident residing overseas.” Marked in evidence was a letter from the Ocean County Board of Elections reinstating him “as a permanent resident of Ocean County on October 20, 1986.” He claims that he was unable to vote in any state elections but was able to vote for president and “federal senator.” Such status is permitted under the Overseas Residents Federal Election Absentee Voting Law, N.J.S.A. 19:59-1 et seq., effective May 7,1976. Under this act, an “Overseas Federal election voter” may vote by absentee ballot in a federal election. Among the qualifications for such a voter is that he was domiciled in New Jersey immediately prior to his departure from the United States. N.J.S.A. 19:59-2.d.
At the end of the two-year period for which his visa had been issued in 1982, he received a second two-year visa. However, his employment was terminated and he left Saudi Arabia on June 15, 1986, at the direction of the Royal Commission prior to the expiration of his second two-year visa. He had, in effect, been “Saudi-ized” in 1986, that is to say, he was “replaced by a Saudi,” a Saudi Arabian national who had been studying in the *294 United States and receiving the training and experience that plaintiff had. In 1986, he was advised that in 30 days he would no longer be needed and that his position would be filled by a “national.” He returned to his family and took up residence at the Reedy Drive property in Bricktown, New Jersey.
During the year 1984, his wife filed for, and received, a homestead rebate for the property at 407 Reedy Drive, Brick-town, New Jersey. Although he did not sign the homestead rebate application, his wife was authorized to sign for him because his “wife had power of attorney.” There is also in the record the following question and answer asked and given during cross-examination of plaintiff:
Q. Do you maintain a permanent home in any other place other than New Jersey?
Á. Yes. Pennsylvania.
Plaintiff testified that he owned “three acres with a cabin on it” in Honesdale, Pennsylvania, which he considers his “second home.” This property was used generally as a summer residence or when visiting relatives in the area. He had also previously registered his cars in Pennsylvania because “insurance was cheaper.” Although he operated his cars in both New Jersey and Pennsylvania, he had no valid New Jersey driver’s license, but had maintained a Pennsylvania driver’s license which was valid through August 31, 1986, with his address indicated as R.D. 3, Box 1100, Honesdale, Pennsylvania 18431.
Domicile is a matter of intent involving physical presence or contact with the given jurisdiction and an intention to remain in that jurisdiction or to return to that jurisdiction after leaving it. Once established, a domicile continues until super-ceded by a new one. In re Gillmore’s Estate, 101 N.J.Super. 77, 87, 243 A.2d 263 (App.Div.1968), certif. den. 52 N.J. 175, 244 A.2d 304 (1968). No person is ever without a domicile in the eyes of the law, and a person is presumed to be domiciled in his domiciliary state until a new domicile is acquired. Lyon v. Glaser, 60 N.J. 259, 277, 288 A.2d 12 (1972). There can be no establishment of a new domicile unless there is proof of an intent to abandon an original domicile. Bowman v. DuBose, *295 267 F.Supp. 312, 313-314 (D.S.C.1967); Citizens State Bank and Trust Co. v. Glaser, 70 N.J. 72, 81, 357 A.2d 753 (1976); Lyon v. Glaser, supra, 60 N.J. at 264, 288 A.2d 12. Any disputed issue on the subject requires an evaluation of all the facts and circumstances of the case. Id. at 264-265, 288 A.2d 120.
Given all the facts and circumstances, the court concludes that plaintiff was domiciled in New Jersey in 1984. The ownership of the home at 407 Reedy Drive, Bricktown, New Jersey in the joint names of plaintiffs and the use and occupancy of that home by plaintiff-wife and plaintiffs’ children in 1984 constitute a physical presence in, or physical contact with, New Jersey sufficient to meet that part of the domicile requirement. The intent aspect of the domicile requirement is more involved, but the court concludes that plaintiff only intended to remain in Saudi Arabia as long as he had work there and that he intended to return to the place of his family’s residence in New Jersey when his work was terminated. Plaintiff, by his own words, did not intend to abandon the United States as his home, and New Jersey was and is his domicile in the United States. Plaintiff confirmed his New Jersey domicile at the time he left in October 1982 by registering to vote under the Overseas Residents Federal Election Absentee Voting Law which provides that, in order to qualify under the law, a voter must have been domiciled in New Jersey immediately prior to his departure from the United States.
In attempting to establish domicile, a person must present evidence that the desire to remain in the claimed place of domicile will not expire when the reason for presence in that place does. Stifel v. Hopkins, 477 F.2d 1116, 1122 (6 Cir.1973). The evidence in the present case is, however, quite to the contrary. In the first place, when plaintiff left New Jersey to work in Saudi Arabia he knew that his stay in that country was completely subject to the will of the Saudi Arabian government. He could not stay in Saudi Arabia as long as he wanted to stay. He could only stay as long as that government permitted him *296 to stay. Secondly, plaintiff knew or should have known, when he left New Jersey in 1982, that his work in Saudi Arabia would involve training Saudi Arabian nationals to take over the very job he was hired to perform. He was in Saudi Arabia only for as long a period of time as it would take to train a person to do his work or, in plaintiffs words, until he was “Saudi-ized.”
A domiciliary is, according to N.J.S.A. 54A:1-2.m.1., nevertheless not a resident for purposes of the New Jersey Gross Income Tax Act if he maintains no permanent place of abode in this State, maintains a permanent place of abode elsewhere and spends no more than 30 days in New Jersey in the taxable year. All three requirements must be met to avoid payment of the tax. Goffredo v. Taxation Div. Director, 9 N.J.Tax 135 (Tax Ct.1987).
It is true that plaintiff only spent an aggregate of ten days in New Jersey in 1984. He did, however, maintain a permanent place of abode in New Jersey in which abode his wife and children lived and to which abode the court has concluded he intended to return when his work in Saudi Arabia was completed. He also maintained a money market account in the same municipality as the abode, and his wife also maintained a bank account in that municipality. Plaintiff also testified that he maintained a permanent home in both New Jersey and Pennsylvania.
The maintenance of a permanent place of abode in this State is further evidenced by the execution of a homestead rebate claim form for 1984 by plaintiff-wife for herself and by plaintiff through the power of attorney he gave his wife. Under the Homestead Rebate Act, N.J.S.A. 54:4-3.80.a., “[ejvery citizen and resident of this State shall be entitled, annually, to a homestead rebate on a dwelling house and the land upon which such dwelling is situated, ...” By executing and filing a homestead rebate form, plaintiff and his wife assert that they are citizens and residents of this State. See Rubin v. Glaser, 83 N.J. 299, 416 A.2d 382 (1980), app. dism. 449 U.S. 977, 101 S.Ct. 389, 66 L.Ed.2d 239 (1980). There is a “nexus *297 between those who own their principal residence in New Jersey and those who pay the New Jersey gross income tax.” Id. at 307, 416 A.2d 382. The Homestead Rebate Act was adopted in conjunction with the New Jersey Gross Income Tax Act. No one, therefore, should be permitted to claim he is a resident of New Jersey in order to obtain a homestead rebate while denying that he is a resident of New Jersey to avoid paying the gross income tax.
Since plaintiff maintained a permanent place of abode in New Jersey in 1984, it is not necessary to determine if he maintained a permanent place of abode elsewhere. However, contrary to plaintiffs protestations, his place of abode in Saudi Arabia cannot be characterized as a permanent place of abode for purposes of the New Jersey Gross Income Tax Act. The maintenance of a permanent place of abode is akin to the maintenance of a domicile and must depend on the intent of the person maintaining the abode and not on the intent or control of a third party, as is the case here. Plaintiff was not in Saudi Arabia permanently; he was in Saudi Arabia until his specific work was completed, and plaintiff, as he testified, goes to live whereever he can sell his services. He also sent his savings to banks in New Jersey and Pennsylvania,[1] and, although he maintained a savings account in Saudi Arabia, it was used for his current living expenses.
While it is true that a person has a right to choose his domicile and the motives for his choice are immaterial to a determination of domicile, Wolff v. Taxation Div. Director, 9 N.J.Tax 11 (Tax Ct.1986), “declarations of domicile motivated by tax considerations may be carefully scrutinized and readily rejected when negated by the objective circumstances.” Lyon v. Glaser, supra, 60 N.J. at 281, 288 A.2d 12 (Jacobs, J. dissenting). In the present case, there can be no doubt that *298 plaintiff’s declarations of intent in order to establish domicile were motivated by tax considerations. For example, although the court concludes that his method of handling his money actually indicates that Saudi Arabia was not his permanent place of abode, plaintiff established the method to “avoid” the problems presented to him by this case. This is another way of saying that plaintiff wanted to avoid the payment of gross income taxes, a motive which justifies this court’s rejection, based on objective circumstances, of plaintiff’s declarations of domicile.
Since plaintiff was domiciled in New Jersey in 1984 and maintained a permanent place of abode in this State, he was a resident taxpayer for that year under the gross income tax act. His claim for a refund is denied, and defendant’s determination that plaintiff is liable for a gross income tax deficiency is affirmed. The Clerk of the Tax Court will enter a judgment accordingly.

Based on plaintiff’s testimony, he may be considered to have a permanent home in Pennsylvania. He does not, however, claim that home as a basis for not being subject to the New Jersey Gross Income Tax Act.