LASSER, P.J.T.C.
This is an action in which taxpayers contest imposition of the Emergency Transportation Tax, N.J.S.A. 54:8A-1 et seq., (ETT) on their New Jersey-derived income for the year 1979. John W. Riehm is a New York state resident employed in Englewood Cliffs, New Jersey, by a New Jersey corporation. Taxpayers filed a joint New Jersey emergency transportation tax nonresident return for 1979, reporting New Jersey-source income of $103,440.78 but deducting $102,765.93 in business losses on property and investments outside of New Jersey (non-New Jersey losses) for a total income of $674.85 before itemized *91 deductions of $748.19. Taxpayers reported a tax due of $123.71 based on the minimum income tax computation, and sought refund of $2,161.28 of tax withheld by Riehm’s employer. The Director of the Division of Taxation, acting pursuant to N.J. A.C. 18:10-7.4(b), denied the deductions for non-New Jersey losses and assessed a tax deficiency of $5,162.33 and interest charges of $309.74. Taxpayers appealed to the Tax Court and have moved for summary judgment based on stipulated facts. Taxpayers have withdrawn their contest of denials of claims for refund of ETT for 1972, 1973 and 1974.
The Emergency Transportation Tax was levied, in pertinent part, on the New Jersey-derived income of out-of-state residents. In 1983 the New Jersey Supreme Court held the tax unconstitutional as a violation of the Privileges and Immunities Clause of the United States Constitution.[1] Salorio v. Glaser, 93 N.J. 447, 461 A.2d 1100 (1983). The relief granted by the Court was prospective only, and the Division of Taxation was given permission by the Court to continue collecting the tax until December 31, 1983.
Taxpayers contend that the prospective relief granted by the Salorio Court should not apply to them because, unlike the taxpayers in Salorio, they are directly harmed by continued collection of the tax. Each of the taxpayers in Salorio had received a credit against his New York State income tax for taxes he had paid to New Jersey. The Riehms, on the other hand, had no income taxable by New York for 1979 because of large losses that fully offset their income. As a result, they could not avail themselves of a credit against their New York tax to negate the effect of the ETT. If they are required to pay the ETT now, they argue, they will actually suffer out-of-pocket losses to the extent of the tax. Taxpayers contend that only prospective relief was granted in Salorio because, as the Supreme Court there observed, the taxpayers before the Court *92 in fact had suffered no harm. It is taxpayers’ position here that, on the facts of the subject case, refusal to grant retroactive relief by setting aside the deficiency assessment would violate the Privileges and Immunities Clause. In short, taxpayers contend that in fashioning a remedy for a constitutional violation, the court cannot violate the constitutional guarantees of the Privileges and Immunities Clause.
The Director maintains that the remedy fashioned by the Salorio Court was based on equitable considerations and that the rationale for the remedy in Salorio hinged on the reliance of the State of New Jersey on anticipated ETT revenues. The Director contends that the court is free to fashion a reasonable remedy regardless of the basis of the violation, and he points to the Salorio Court’s citations to cases concerning Equal Protection, the Establishment Clause of the First Amendment and local property tax to support that position. The Director argues that the lack of harm suffered by the Salorio taxpayers was incidental to the Court’s decision, that this court is bound by Salorio, and that taxpayers’ claim must be dismissed.
Discussion
I
The United States Supreme Court has time and again rejected the contention that a court must grant retrospective relief for past constitutional violations. In Great Northern R. Co. v. Sunburst Oil and Refining Co., 287 U.S. 358, 364, 53 S.Ct. 145, 148, 77 L.Ed. 360 (1932), the Court held that “the Federal constitution has no voice upon the subject” of retrospectivity. The constitution neither prohibits nor requires that retrospective effect be given to any new constitutional ruling. United States v. Johnson, 457 U.S. 537, 542, 102 S.Ct. 2579, 2583, 73 L.Ed.2d 202 (1982); Tehan v. United States, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966), reh’g den. 383 U.S. 931, 86 S.Ct. 925, 15 L.Ed.2d 850 (1966); Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). The Court has stressed that
the choice between retroactivity and non-retroactivity in no way turns on the value of the constitutional guarantee involved____
*93 [W]e do not disparage a constitutional guarantee in any manner by declining to apply it retroactively ....
[The question of retroactivity] is not automatically determined by the provision of the Constitution on which the dictate is based. [Johnson v. New Jersey, 384 U.S. 719, 728, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), reh’g den. 385 U.S. 890, 87 S.Ct. 12, 17 L.Ed.2d 121 (1967)]
Three criteria are used by the Supreme Court in determining the retroactivity of a new rule or decision overruling precedent or the validity of a prospective statutory remedial scheme. Those criteria are: (1) the purpose to be served by the particular new rule, decision or scheme, (2) the extent of reliance which had been placed on the former rule or scheme and (3) the effect on the administration of justice of requiring retroactive application of the new rule, decision or scheme. Tehan v. United States, supra; see generally, Annotation, 22 L.Ed.2d 821.
Based on these considerations, retroactive application of a constitutional decision was denied in Northern Pipeline Construction Co. v. Marathon Pipeline Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (jurisdiction of bankruptcy courts), Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (federal campaign financing), and Cipriano v. Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969) (municipal utility bond elections), and in Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the statute of limitations adopted by the court was given only prospective effect. See also Los Angeles Department of Water and Power v. Manhart, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978), in which retroactive liability was not imposed on a municipal pension program that violated Title VII of the Civil Rights Act of 1964 (42 U.S. C.A. § 2000e-2(a)(l)).[2] The Court reasoned that “retroactive liability,” i.e., returning to female pension fund contributors the amounts they had been overcharged, “could be devastating for a pension fund” by threatening the fund’s solvency. Id. 435 U.S. at 721, 98 S.Ct. at 1382.
*94 The Supreme Court’s most recent case on this subject is Heckler v. Matthews, 465 U.S. 728, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984). At issue was a congressional statute that extended for five years an aspect of the social security spousal benefit program that had been declared unconstitutional in Califano v. Goldfarb, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977). In Goldfarb, the Court had held that the spousal benefit program discriminated against males who were not dependent on their spouses for at least 50% of their support, by giving such males reduced benefits. The program thus was violative of the guarantees of equal protection contained in the Due Process Clause of the Fifth Amendment of the United States Constitution. Congress, in response to the Goldfarb decision, enacted amendments to the Social Security Act in 1977 substantially retaining the discriminatory effect of the original law for a period of five years.
The Supreme Court, in a unanimous decision announced by Justice Brennan, upheld the amendments. The court found that although the discrimination was “temporarily revive[d],” the governmental purpose was not “illegitimate” because Congress’s “purpose was to protect reliance [by soon-to-be pensioners] on prior law,” 465 U.S. at 746, 104 S.Ct. at 1398-99, 79 L.Ed.2d at 661, and “to prevent the serious fiscal drain that [Congress] concluded would result from payment of unreduced benefits to the new class of recipients made eligible by the decision in Goldfarb.” Id., 465 U.S. at 742, 104 S.Ct. at 1396, 79 L.Ed.2d at 658. Referring to cases cited earlier in this opinion, the Court stated, “we have recognized, in a number of contexts, the legitimacy of protecting reasonable reliance on prior law even when that requires allowing an unconstitutional statute to remain in effect for a limited period of time.” Id. 465 U.S. at 746, 104 S.Ct. at 1398, 79 L.Ed.2d at 661.
Over a time span of 50 years, the Supreme Court has consistently reiterated its opinion that new constitutional rules and remedies for constitutional violations may be prospective if retroactivity would jeopardize important societal interests. See Lemon v. Kurtzman, 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d *95 151 (1973). In spite of these clear statements, the taxpayers take the novel stand that the fashioning of the remedy in this case is itself a constitutional matter and a prospective remedy is unconstitutional when it specifically harms nonresident taxpayers.
Taxpayers have not cited any authority for their proposition. Furthermore, Heckler v. Matthews, supra, clearly supports the conclusion that, in some circumstances, the court can permit a remedy that violates taxpayers’ constitutional rights. I am not persuaded that the Constitution requires that those persons seeking relief for Privileges and Immunities Clause violations be treated differently from those whose equal protection or due process rights have been violated.
The New Jersey Supreme Court in Salorio v. Glaser, supra, 93 N.J. at 464, 461 A.2d 1100, at the outset of its discussion of remedies, referred to many of the cases discussed above and pointed out that considerations governing equitable remedies “may or may not be” the same as those governing retroactivity or non-retroactivity in other settings. 93 N.J. at 464, 461 A.2d 1100. The court found Lemon v. Kurtzman, supra, to be “particularly instructive.” Ibid. In Lemon, the Supreme Court held that a Pennsylvania program that reimbursed private sectarian schools for certain secular educational services violated the First Amendment to the United States Constitution. The Supreme Court affirmed the lower court’s decision which enjoined future payments under the act but denied reimbursement to the state for previous expenditures. Justice Schreiber in Salorio quoted the Lemon opinion: “ ‘[Rjeliance interests weigh heavily in the shaping of an appropriate equitable remedy.’ [411 U.S.] at 203, [93 S.Ct. at 1471] ...” 93 N.J. at 464, 461 A.2d 1100.
In fashioning its remedy, the focal point for the New Jersey Supreme Court in Salorio was the extent of reliance by the state treasury on the revenues it expected the ETT to generate. “Foremost among the factors to be considered is the State of New Jersey’s justifiable reliance upon the availability of the *96 ETT funds.” Id., 93 N.J. at 465, 461 A.2d 1100. The court explained:
We are persuaded to fix a prospective date because of our concern for the fiscal and administrative problems that would be engendered if the State were compelled to surrender ETT receipts before the end of the fiscal year. The State should be afforded a reasonable period of time to devise alternative revenue raising methods____ [Id, 93 N.J. at 467, 461 A.2d 1100],
Taxpayers maintain that the absence of harm suffered by the Salorio taxpayers was the critical factor in the Court’s decision. They argue that in balancing the equities, this court should balance the reliance of the State on anticipated revenues [3] against the taxpayers’ liability for taxes which were not offset by a credit against their New York taxes.[4]
The Salorio complaint contained a claim for damages to the extent of ETT taxes paid to New Jersey. The Court, in denying the claim for reimbursement (damages), observed that “[i]t is of considerable moment that the plaintiffs have suffered no financial harm because they have received a credit for the amount paid to New Jersey against their New York income tax.” The Court then concluded, “under the circumstances, we believe that reimbursement is not warranted.” Id. 93 N.J. at 466, 461 A.2d 1100.
Had the Supreme Court ordered damages to the extent of New Jersey ETT taxes paid, as requested by the Salorio plaintiffs, it would have conferred a windfall on them. One could conclude that the reference to the lack of harm suffered by the Salorio plaintiffs was made for the purpose of disposing of their damage claim and not as a primary consideration in the balancing of equities.
*97 The absence of harm to the taxpayers in Salorio and the presence of harm to the taxpayers in the case at bar are, ultimately, not controlling considerations. In weighing the equities and tipping the balance in favor of the State, the Court acted in consonance with the rulings of the United States Supreme Court, and no departure from Salorio is warranted here.
II
Taxpayers raise a second argument. They contend that the Director should not have disallowed the deduction for losses because doing so results in the imposition of tax on income not taxed in New York, a result not intended by the statute. They argue that the Legislature intended the ETT to “mirror” the New York tax. They further argue that the effect of this “mirroring” should be that no New York resident would be taxed to a greater extent by New Jersey than he would be by New York. Taxpayers thus maintain that the regulation implementing the statute, N.J.A.C. 18:10-7.4(b), does not follow the intent of the act and that the Director’s action contravened the Legislature’s intention.
The ETT levied a tax on the income of non-residents derived from sources within New Jersey. N.J.S.A. 54:8A-2(b). The Legislature explicitly disallowed as a deduction “any amount otherwise allowable as a deduction which is allocable to income not required to be included in gross income for the purposes of this act.” N.J.S.A. 54:8A-40(d). In N.J.S.A. 54:8A-35, the Legislature enumerated types of losses and expenses that were deductible; all involved New Jersey property or transactions. The Legislature permitted out-of-state residents to offset their New Jersey income only with New Jersey losses.
I find that N.J.A.C. 18:10—7.4(b)[5] is within the scope of the act and that the act is clear in not permitting non-New Jersey *98 losses to offset the New Jersey income of non-residents. The plain words of the ETT and the corresponding provisions of the New York income tax statute therefore compel me to conclude that taxpayers’ argument must fail.
Taxpayers argue that the Legislature intended the New Jersey tax to mirror the New York tax. Perhaps the New Jersey ETT mirrors the New York ETT. However, because taxpayers are New York residents, it is the New York income tax (not the New York ETT) and the New Jersey ETT to which they are subject. The New York Income Tax Act imposes no geographical limitations on the source of taxable income and deductible losses for New York residents. Therefore, the two taxes not only do not mirror each other, they cannot, for New Jersey cannot tax the income of a non-resident which is derived from a source outside of New Jersey. Since New Jersey does not tax the income from non-New Jersey sources, it follows that it need not allow a non-resident to deduct losses from non-New Jersey sources.
If the taxpayers herein had taxable income from New York sources for 1979, New Jersey would not have taxed that income. Similarly, New Jersey would not reduce the tax owing by these taxpayers because of the absence of taxable income in New York as a result of non-New Jersey losses. See Shaffer v. Carter, 252 U.S. 37, 56-57, 40 S.Ct. 221, 227, 64 L.Ed. 445 (1920), in which the United States Supreme Court noted that a statutory provision permitting nonresidents to take deductions only for losses incurred within the taxing state, but permitting residents to deduct all losses, was justified because, unlike the income of nonresidents, residents’ income, wherever derived, was subject to the state income tax. See also cases collected in *99 Rubin v. Glaser, 83 N.J. 299, 305-306, 416 A.2d 382 (1980), app. dism. 449 US. 977, 101 S.Ct. 389, 66 L.Ed.2d 239 (1980).
“[Wjhere the wording of the statute, as here, is explicit and clear, the court is not free to indulge in a presumption, arising from extrinsic evidence, that the Legislature intended something other than what it actually expressed. Excepting where uncertainty or ambiguity appears, the enactment must speak for itself and be construed according to its own terms.” Bass v. Allen Home Improvement Co., 8 N.J. 219, 226, 84 A.2d 720 (1951).
In spite of taxpayers’ strenuous arguments to the contrary, I find that there is nothing in the ETT, N.J.S.A. 54:8A-1 el seq., that impels the conclusion that the Legislature intended that a non-resident pay no more tax to New Jersey than he would pay to his own state.
Taxpayers’ motion for summary judgment is denied and counsel for the Director will submit an appropriate order pursuant to Rule 4:42—1(b).

 "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States.” U.S. Const. Art. IV, § 2, cl. 1.

 Under Title VII, the Court has the option of granting retroactive relief.

 Taxpayers contend that because they had not paid the tax, there could not have been any reliance on the part of the State. Generally, State budgets are prepared based on anticipated revenues, and there is no evidence to the contrary in this case. Therefore, whether the taxpayers paid the tax or whether the State must refund the tax or merely set the assessment aside is of no moment.

 Taxpayers acknowledge that there may be an unknown number of similarly situated non-resident taxpayers.'

 N.J.A.C. 18:10-7.4(b) provides:
*98 The New Jersey adjusted gross income of a nonresident individual does not include items of income, gain, loss and deduction attributable to the ownership of any interest in real or tangible personal property located outside of this State, even though rental payments in respect of the property may be made from a point within the State. Source: N.J.S.A. 54.-8A-35, -36. [emphasis supplied]