SMALL, P.J.T.C.
The plaintiffs in this case, challenge an assessment for additional taxes under the New Jersey Gross Income Tax, N.J.S.A. 54A:1-1 through 54A:10-12. The assessment is based on the salary that Mr. Samuelsson earned from January thru April, 1999 from employment in Florida. Resolution of the dispute depends on whether the taxpayers, Kjell and Vicki Samuelsson, were residents of New Jersey during that part of 1999 when Mr. Samuelsson earned a salary from the Tampa Bay Lightning, a professional hockey team in Florida. In this case, a determination of the Samuelssons’ residence rests on a finding of whether they abandoned their New Jersey domicile in 1998.
Up until the 1998-1999 hockey season, Kjell Samuelsson played hockey for the Philadelphia Flyers (a professional ice hockey team in the National Hockey League (“NHL”)). Mr. and Mrs. Samu-elsson owned a home in Voorhees, New Jersey. They also owned a seasonal (summer) home in Sweden and an investment property in South Carolina. Through 1998, the Samuelssons filed New Jersey resident income tax returns. For 1999, they filed a New Jersey resident income tax return claiming part year residence from July 1,1999 to December 31,1999. The Director claims that for gross income tax purposes, they were New Jersey residents for the entire year.
In October 1998, Kjell Samuelsson signed a one-year (1998-1999 seasonal) contract to play hockey for the Tampa Bay Lightning. *246 As a result of that work obligation, the Samuelssons rented a home in Tampa, Florida. They removed all of their furniture from the house in New Jersey and, at the expense of the Tampa Bay Lightning, moved it to their rental home in Florida, and a storage location in Florida. They listed their New Jersey home for sale. Mrs. Samuelsson testified that she looked to purchase a home in Tampa. The Samuelssons-did not purchase a home in Florida because, Mrs. Samuelsson testified, they were not prepared to purchase a home in Florida before they sold their New Jersey home and they could not get an acceptable price for the New Jersey home. She also testified that a house for sale “shows better” if it is furnished, but that she had moved all of their furniture to Florida because they intended to move there.
Kjell Samuelsson, at age 41, retired from hockey at the end of the 1998-1999 season. The family spent the summer of 1999 in Sweden and returned to their New Jersey home in September 1999. In November 1999, Kjell Samuelsson was employed as an assistant coach with the Trenton (New Jersey) Titans hockey team.
N.J.S.A. 54A:1-2(m) defines a resident taxpayer as an individual:
(1) who is domiciled in this State, unless he maintains no permanent place of abode in this State, maintains a permanent place of abode elsewhere, and spends in the aggregate no more than 30 days of the taxable year in this State; or
(2) Who is not domiciled in this State but maintains' a permanent place of abode in this State and spends in the aggregate more than 183 days of the taxable year in this State, unless such individual is in the Armed Forces of the United States.
[N.J.S.A. 54A:1-2(m).]
During 1999, the Samuelssons spent more than 30, but fewer than 183 days, in New Jersey. They had a permanent place of abode in New Jersey. Thus, whether they were New Jersey residents prior to September 1999 turns on whether they were domiciled in this state during that period.
Domicile is a matter of intent involving physical presence or contact with the given jurisdiction and an intention to remain in that jurisdiction or to return to that jurisdiction after leaving it. Once established, a domicile continues until superceded by a new one. In re Gillmore’s Estate, 101 N.J.Super. 77, 87, 243 A.2d 263 (App.Div.1968), certif. den. 52 N.J. 175, 244 A.2d 304 (1968). No person is ever *247 without a domicile in the eyes of the law, and a person is presumed to be domiciled in his domiciliary state until a new domicile is acquired. Lyon v. Glaser, 60 N.J. 259, 277, 288 A.2d 12 (1972). There can be no establishment of a new domicile unless there is proof of an intent to abandon an original domicile. Bowman v. DuBose, 267 F.Supp. 312, 313, 314 (D.S.C.1967); Citizens Bank and Trust Co. v. Glaser, 70 N.J. 72, 81, 357 A.2d 753 (1976); Lyon v. Glaser, supra, 60 N.J. at 264, 288 A.2d 12. Any disputed issue on the subject requires an evaluation of all the facts and circumstances of the case. Id. at 264-265, 288 A.2d 12.
[Quick v. Director, Div. of Taxation, 9 N.J. Tax 288, 294-295 (Tax 1987).]
The issue then is did the Samuelssons abandon their New Jersey domicile in 1998 and resume it in the fall of 1999 or were they New Jersey domiciliaries throughout the period. To abandon their New Jersey domicile they would have had to acquire a Florida domicile in the fall of 1998.
The facts supporting their acquisition of a Florida domicile and the abandonment of their New Jersey domicile revealed by the testimony of the Samuelssons and other evidence are as follows:
(1) They moved all of their furniture and belongings to Florida.
(2) They listed their New Jersey house for sale.
(3) They did not rent out their New Jersey house.
(4) Mrs. Samuelsson looked for a house to purchase in Florida.
(5) They sadly said farewell to their friends in New Jersey.
(6) They enrolled their children in school in Florida.
(7) They closed then- New Jersey bank accounts and opened accounts in Florida.
(8) Mr. Samuelsson got a Florida driver’s license and registered his car in Florida.
The facts supporting the argument that the Samuelssons never abandoned their New Jersey domicile are as follows:
(1) They never sold their New Jersey home.
(2) They returned to their New Jersey home within one year of moving to Florida.
(3) They never purchased, but only rented, a home in Florida.
(4) Mr. Samuelsson worked in Florida for less than one year — when he left New Jersey, he was working in Philadelphia; when he returned he worked in Trenton and Philadelphia.
(5) Mrs. Samuelsson did not change her voter registration or driver’s license to Florida.
The key issue thus is what was the Samuelssons’ intention when they moved from New Jersey to Tampa in the fall of 1998. Mr. Samuelsson was 41 years old and as he described himself, an old man for playing hockey. He had previously played in New York, Pittsburgh, and Philadelphia. A typical NHL contract for some *248 one of Mr. Samuelsson’s age would be for one year. As the 1998-1999 season progressed, it became evident to Mr. Samuelsson that it would be his last as a NHL player and he began to look for coaching positions, first with Tampa Bay. However, due to a change in ownership of the team, and perhaps other reasons, Mr. Samuelsson was not successful in securing a coaching position with the Tampa Bay team. He pursued other job opportunities with teams and people he knew, but was uncertain where he would work when he and his family went to Sweden for their annual visit with Mr. Samuelson’s family. They moved all of their furniture and belongings to storage in Florida. While he was in Sweden, he continued to look for a coaching position. As the summer ended, Mr. Samuelsson did not have a job for the fall. He needed to return to the United States for immigration purposes. They wanted to enroll their children in school. They owned a house in New Jersey. The Samuelssons returned to New Jersey.
It thus is clear and undisputed that the Samuelssons were domiciliaries of New Jersey until they left for Florida in the fall of 1998. It is also undisputed that after September 7, 1999 (when Mr. Samuelsson returned) and September 14 (when Mrs. Samuels-son returned) to New Jersey they were New Jersey residents and domiciliaries. In fact, they filed their 1999 New Jersey Gross Income Tax return as though they were residents of New Jersey from July 1,1999. Did they abandon their New Jersey domicile in the fall of 1998?
In Lyon v. Glaser, 60 N.J. 259, 288 A.2d 12 (1972), our Supreme Court wrote:
Domicile is very much a matter of the mind — of intention. One may be acquired, or change to a new one, when there is a concurrence of certain elements; ie., an actual and physical taking up of an abode in a particular State, accompanied by an intention to make his home there permanently or at least indefinitely, and to abandon his old domicile. A person has the right to choose his own domicile, and his motive in doing so is immaterial. The change may be made to avoid taxation, so long as the necessary ingredients for establishment of the new domicile are present. A very short period of residence in a given place may be sufficient to show domicile, but mere residence, regardless of its length, is not sufficient. It has been said that concurrence, even fin- a moment, of physical presence at a dwelling place with the intention of making it a permanent abode, effects a change of domicile. And once established, the domicile continues until a new one is found to have been acquired through an application of the same tests. Since the concept *249 of domicile involves the concurrence of physical presence in a particular State, and an intention to make that State one’s home, determination of a disputed issue on the subject requires an evaluation of all the facts and circumstances of the case.
[Id. at 264-65, 288 A.2d 12 (citations and footnote omitted) (emphasis added).]
See also In re Unanue, 255 N.J.Super. 362, 374-77, 605 A.2d 279 (Law Div.1991), aff'd, 311 N.J.Super. 589, 710 A.2d 1036 (App. Div.), certif. denied, 157 N.J. 541, 724 A.2d 801 (1998), cert. denied, 526 U.S. 1051, 119 S.Ct. 1357, 143 L.Ed.2d 518 (1999) (describing the elements of acquiring and abandoning a domicile).
I find that, although Mr. Samuelsson’s contract was for less than one year, and it was uncertain where he would work after the end of the contract, he had no reason at the time of signing the contract and moving to Florida to believe that he would be in New Jersey rather than Florida or Pittsburgh at the end of the year. Mr. Samuelsson’s career had taken him to three cities before he went to Tampa, he had never returned to a city he had left, and there were no contracts or other reasons that would have led him back to the Philadelphia or New Jersey area. His decision to return to New Jersey was only made after he had abandoned his New Jersey domicile as a result of his declining skills as a hockey player, which became evident during the 1998-1999 season, and his inability to secure a coaching position in Florida. Although the Samuelssons continued to own a home in New Jersey, it had been listed for sale and the Samuelssons had moved all of their furniture to Florida, their new domicile. They looked to purchase a home in Florida, but did not do so, at first, because they had not sold their New Jersey residence, and later perhaps because Mr. Samuelsson’s career in Tampa was coming to an end. I find that the fact that Mr. Samuelsson changed his driver’s license and auto registration to Florida, and Mrs. Samuelsson did not, more attributable (as Mrs. Samuelsson testified) to his attention, and her inattention, to the requirements of the motor vehicle laws than to a reflection of whether it was their intention to abandon their New Jersey domicile.
Also, Mrs. Samuelsson testified that she only voted in the United States presidential election and thus was unmotivated to change her voter registration to Florida before 2000, the next *250 presidential election. Mr. Samuelsson is a non-resident alien and does not vote in the United States.
I find that the Samuelssons had abandoned their New Jersey domicile for Florida when they moved in the fall of 1998. The fact that after that abandonment they returned to New Jersey is a result of facts and circumstances which arose during the 1998-1999 season, after they had abandoned their New Jersey domicile. The fact that the Samuelssons were domiciled in New Jersey up to the fall of 1998 and after the fall of 1999 does not mean that they could not abandon and then reestablish that New Jersey domicile.
To make a determination of the intentions of the Samuelssons at the end of 1998, one needs to evaluate both the facts of their actions and the “facts” of their intentions. See Lyon v. Glaser, supra, 60 N.J. at 264-65, 288 A.2d 12. Having heard their testimony, I am convinced that they intended to abandon their New Jersey domicile when they moved to Florida in 1998. Somewhere between their abandoning their New Jersey domicile in late 1998 and their return to New Jersey in late 1999, they fonned an intention to reestablish their domicile in New Jersey. But, that domicile was not reestablished until they moved themselves and their belongings back to New Jersey in the fall of 1999. To paraphrase Lyon v. Glaser, supra, 60 N.J. at 264-65, 288 A.2d 12, they remained domiciled in Florida until their intention to move back to New Jersey was coupled with their actual move to New Jersey, at which time they reestablished their New Jersey domicile. Although a precise date cannot be found in the record in this case, it would appear that the intention was crystallized while they were in Sweden and Mr. Samuelsson still did not have a job. They had to return to the United States and they owned a home in New Jersey. But they did not establish domicile until they actually moved back to their New Jersey home.
Judgment will be entered in favor of plaintiffs, dismissing the Director’s assessment of taxes based on a conclusion that the plaintiffs were full-year residents for 1999. The court finds that during 1999, they were part year residents beginning in September and they filed returns claiming part year residence from July *251 1, 3999 to December 31, 1999. Thus, the Samuelssons were not residents of New Jersey during the first half of 1999, and Mr. Samuelsson’s salary earned during that period, except for those few dates when he actually played hockey in New Jersey, was not subject to the New Jersey Gross Income Tax. See N.J.A.C. 18:35-5.1 (relating to New Jersey source income for members of professional athletic teams).
Counsel for the plaintiffs will submit an appropriate form of order.